# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| **RICHARD GRAY,** | § | |
| **Fed. Reg. No. 22708-380,** | § | |
| **Movant,** | § | |
| | § | **EP-18-CV-93-PRM** |
| **v.** | § | **EP-13-CR-1832-PRM-4** |
| | § | |
| **UNITED STATES OF** | § | |
| **AMERICA,** | § | |
| **Respondent.** | § | |

## MEMORANDUM OPINION AND ORDER
## DENYING MOVANT'S MOTION TO VACATE

On this day, the Court considered Movant Richard Gray's [hereinafter "Movant"] pro se "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody" (ECF No. 735) [hereinafter "Motion to Vacate"], filed on March 26, 2018; Movant's "Memorandum in Support of Section 2255 Motion" (ECF No. 750) [hereinafter "Memorandum in Support"], filed on May 18, 2018; and the Government's "Response to Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody" (ECF No. 774) [hereinafter "Response"], filed on September 14, 2018, in the above-captioned cause. After due consideration, the Court is of the opinion that Movant's Motion to Vacate should be denied, for the

reasons that follow. Additionally, the Court is of the opinion that Movant should be denied a certificate of appealability.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 21, 2013, a grand jury returned an "Indictment" (ECF No. 16) charging Movant with one count of Sex Trafficking By Force, Fraud, and Coercion in violation of 18 U.S.C. §§ 1591(a)(1),(2) and (b)(1) and one count of Conspiracy to Sex Traffic Persons in violation of 18 U.S.C. § 1594(c). Then, on January 15, 2014, a grand jury charged Movant in a "Second Superseding Indictment" (ECF No. 138) with additional counts of Sex Trafficking By Force, Fraud, and Coercion in violation of 18 U.S.C. §§ 1591(a)(1),(2) and (b)(1), and Conspiracy to Sex Traffic Persons in violation of 18 U.S.C. § 1594(c). Additionally, the grand jury charged Movant with Sex Trafficking of Children in violation of 18 U.S.C. §§ 1591(a)(1),(2) and (b)(2) and Transportation for Prostitution in violation of 18 U.S.C. § 2421. Second Superseding Indictment at 5, 9.

Attorney Edgar Holguin was initially appointed to represent Movant on behalf of the Federal Public Defender's office. Movant filed a "Motion to Withdraw Counsel of Record" (ECF No. 201), which was

signed on March 18, 2014, and entered on March 24, 2014.    The Court

held a hearing on Movant's Motion to Withdraw Counsel of Record and

granted the motion.    Order Granting Mot. to Withdraw Counsel of

Record, Mar. 26, 2014, ECF No. 253.    Accordingly, Attorney Holguin's

appointment was terminated, and Attorney Thomas Brady was

substituted to represent Movant at trial.    *Id.*

On December 1, 2014, the Court held a *Frye* Hearing.    *See

generally* Resp. Ex. 21 (Motion Hearing Transcript).    At the hearing,

the Government put its plea offer—an offer of twenty-five years'

imprisonment—on the record.    *Id.* at 29:21–22.    The Court reviewed

the pre-plea PSR provided to the defendants and noted that, if the

defendants were to go to trial and be found guilty, they would face a

potential sentence of lifetime imprisonment.    *Id.* at 33:1–5.    After

reviewing this information, Movant rejected the Government's plea

offer.    *Id.* at 43:5–8.

On January 5, 2015, Jury Selection and Trial commenced.

Minute Entry, ECF No. 497.    On January 13, 2015, the parties

concluded presenting evidence, and the Court charged the jury.

Minute Entry, ECF No. 508.    The jury completed deliberations on

January 16, 2015, and reached a unanimous verdict. *See* Jury Note 10 (Sealed), ECF No. 529. The jury found Movant not guilty as to count 3 of the Indictment and guilty as to counts 4, 6, 9, and 11. Verdict, Jan. 16, 2015, ECF No. 531.

On June 25, 2015, the Court held Movant's sentencing hearing. *See generally* Resp. Ex. 25 (Sentencing Hearing Transcript). The Court reviewed Movant's Presentence Investigation Report (PSR) and discussed Movant's offense level. Specifically, the individual offenses with the highest base offense level had a base offense level of 30 and an adjusted offense level of 38 because four points were added for the use of force; two points were added because of serious bodily injury during an assault in Killeen, Texas; and a two-level enhancement was applied due to the use of a computer. *Id.* at 5:8–19. Because there were multiple offenses, adding up to six units, Movant's final adjusted offense level was 44, and his criminal history category was two. *Id.* at 7:6–25. Because the Sentencing Guidelines' highest offense level is 43, any offense level that exceeds 43 is treated as a 43 pursuant to the guidelines; thus, Movant's offense level was treated as a 43. *Id.* at 8:1–4. The corresponding guidelines' range for an offense level of 43 is life

imprisonment.  *Id.*  The Court sentenced Movant to a guidelines'
sentence of life imprisonment as to each of counts four, six, and nine,
and to 120 months imprisonment as to count eleven, to be served
concurrently.  J. in a Criminal Case, June 30, 2015, ECF No. 628.

On March 26, 2018, Movant filed his Motion to Vacate.  Therein,
Movant challenges his sentence based on ineffective assistance of
counsel.  Specifically, Movant asserts that his counsel provided
constitutionally ineffective assistance when the attorney failed to:  (1)
properly advise Movant of his sentencing exposure and, as a result,
Movant rejected the prosecutor's plea offer of twenty-five years'
imprisonment; (2) tell Movant that he could plead guilty and receive a
three-level downward adjustment to his sentence; (3) advise Movant
that he could request a bench trial; (4) object to the jury charge on count
six of the Second Superseding Indictment, which constructively
amended the Indictment; (5) request Movant's Facebook evidence which
would have rebutted the testimony against him; (6) object to the
selection of a jury without any African American members; (7) advise
Movant that the ultimate decision to testify was his; (8) secure evidence
to impeach a witness; (9) move for a mistrial after the prosecution

constructively amended count six of the Second Superseding

Indictment; (10) secure an expert on the credibility of a witness; (11)

object to the use of force sentencing enhancement; (12) obtain a mental

expert who would have testified that Movant returned from Iraq with

Posttraumatic Stress Disorder; and (13) ask the Court to consider

Movant's age and object to the excessive sentence. Mot. to Vacate at

4–8, Mar. 26, 2018, ECF No. 735. For these reasons, Movant asks the

Court to vacate his sentence and allow him the following relief: (1)

accept the plea offer, (2) plead guilty to the Second Superseding

Indictment, (3) receive a new trial, and/or (4) have a new sentencing

hearing. *Id.* at 12.

On May 18, 2018, Movant filed his Memorandum in Support,

which provides Movant's legal theories supporting his Motion to Vacate.

On September 14, 2018, the Government filed its Response.[1]

---

[1] On September 20, 2018, Movant filed a "Petition for Order and
Directions, Granting Mr. Gray's Petition Seeking 28 USCS [sic] 2255"
(ECF No. 776). Therein, he appears to seek a default judgment on his
claims because the Government did not respond within sixty days of
Movant's initial filing. The Fifth Circuit has cautioned that "[d]efault
judgments are a drastic remedy, not favored by the Federal Rules and
resorted to by courts only in extreme situations." *Lewis v. Lynn*, 236
F.3d 766, 767 (5th Cir. 2001) (quoting *Sun Bank of Ocala v. Pelican
Homestead & Savings Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989)) (internal
quotation marks omitted) (alterations in original). Because default

## II.  LEGAL STANDARD

A § 2255 motion "provides the primary means of collateral attack on a federal sentence." *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (quoting *Cox v. Warden*, 911 F.2d 1111, 1113 (5th Cir. 1990)). Relief under § 2255 is warranted for errors that occurred at trial or at sentencing. *Ojo v. INS*, 106 F.3d 680, 683 (5th Cir. 1997). Before a court will grant relief pursuant to § 2255, a movant must establish: (1) his sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted).

A movant may collaterally attack a sentence by alleging ineffective assistance of counsel pursuant to the Sixth Amendment.

---

judgments are disfavored, the Court concludes that the Government's late response should be accepted. Moreover, the Court notes that even if no response were ever filed, the Court would be required to assess the merits of Movant's claims and find a sufficient basis in the pleadings for any default judgment. *See Nishimatsu Const. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

The Sixth Amendment not only guarantees a criminal defendant the right to a speedy trial, but also the right to the effective assistance of counsel. *Lee v. United States*, 137 S. Ct. 1958, 1964 (2017). A court analyzes an ineffective assistance of counsel claim presented in a § 2255 motion under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001).

Pursuant to the *Strickland* test, to succeed on a claim of ineffective assistance of counsel, a movant must prove: (1) that his counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 689–94. In other words, a movant must show that his counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001). The burden of proof is on the movant alleging ineffective assistance. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999). If the movant fails to prove one prong, it is not necessary to analyze the

other.  *See Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one."); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

## III.  ANALYSIS

### A.  Counsel's Advice During Plea Bargaining

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process."  *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (citing *Missouri v. Frye*, 566 U.S. 134, 132 (2012)). The two-part test established in *Strickland v. Washington* applies; accordingly, successful challenges to guilty pleas based on ineffective assistance of counsel must establish that counsel's representation fell below an objective standard of reasonableness and that the defendant was prejudiced as a result.  *Id.* at 162–63 (citing *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)).

Thus, "[i]n the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice."  *Id.* at 163.   If a defendant alleges that he would have

accepted a plea but for the advice of his counsel, then the defendant must show that there is a reasonable probability that: (1) "the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)," (2) "the court would have accepted its terms," and (3) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* at 164.

### 1. Advice regarding Movant's sentencing exposure

First, Movant alleges that "Attorney Brady underestimated [Movant's] sentencing exposure." Mot. to Vacate 5. Movant further avers that "but for the erroneous advise [sic], it is reasonably probable that he would have accepted the Government's plea offer of 25 years and waived his righ[t] to trial." *Id.* Specifically, in his Memorandum in Support, Movant contends that his plea was not voluntary and intelligent because Attorney Brady's performance fell below an objective standard of reasonableness and that, absent his counsel's performance, Movant would have accepted a plea. Mem. in Support 4–5.

As the Government concedes in its Response, Movant's eventual

sentence was greater than the plea offer provided by the Government. *See* Resp. 7–8. Nonetheless, Movant has failed to establish that his counsel's objectively deficient performance led to Movant's rejection of the guilty plea. Instead, the record suggests that Movant received proper advice regarding the range of possible sentences and chose to reject the plea offer.

On December 1, 2014, the Court held a *Frye* Hearing. *See* Resp. Ex. 21 (Mot. Hearing Tr.) at 28:17–37:25. The Court explained that "[a] Frye hearing, basically, is for the purpose of placing on the record the offer that the government has extended in the event that there is any interest on your part to enter a plea of guilty by virtue of a plea agreement" and that the reason for the hearing was, in part, that "defendants are entitled to know what is on the table and to indicate on the record whether they have been made aware of it and whether they accept it or prefer to go to trial." *Id.* at 28:22–29:8.

At the hearing, the Government's attorney stated on the record that the offer to Movant was "an 11(c)(1)(C) offer on Count 9 for 25 years." *Id.* at 29:21–22. Attorney Brady stated that he "communicated [the offer] to Mr. Gray, and [Gray] remain[ed] adamant

that [they] go to trial." *Id.* at 30:25–31:1.   Additionally, at the

hearing, the Court noted that each defendant had, through counsel,

requested to be provided with a pre-plea PSR.   *Id.* at 32:21–22.   The

Court explained:

> Basically, it's an unusual step, but it requires the probation
> office to look at the charge, to become familiar with the
> information through investigative reports that pre-plea PSR
> has suggested to you, as communicated through your counsel,
> that in the event that you were to go to trial and found to be
> guilty, that under the guidelines, the court would be asked to
> consider a sentence within a range of lifetime imprisonment,
> and each one of you has been made aware of that, I am sure.

*Id.* at 32:20–33:5.   After the Court made clear that the sentencing

range included the possibility of life imprisonment, Movant rejected the

Government's offer.   *Id.* at 34:7.

Now, Movant avers that his attorney "was ineffective for

misadvising Mr. Gray that if he went to trial the most he would get

[would be] a maximum sentence of 360 months under the guideline."

Mem. in Support 9.   He further argues that his counsel did not

properly inform him of the maximum sentence.   *Id.*   However,

Movant's assertion stands in direct contrast to the *Frye* hearing.

During the hearing, Movant recognized that he may face a

sentencing range that could include lifetime imprisonment and

12

nonetheless chose to have a jury trial. Thus, Movant's assertion that he believed the maximum sentence would be 360 months lacks merit. For these reasons, the Court concludes that Movant's counsel advised him of the potential sentence range and that the counsel's performance was not objectively deficient. Moreover, the Court ensured that Movant understood his maximum possible sentence, and Movant rejected the plea offer. Because the record makes clear that Movant understood his potential sentence, Movant also cannot establish that he was prejudiced by Attorney Brady's alleged failure to communicate thoroughly about Movant's sentencing exposure. Accordingly, the Court declines to find that Attorney Brady's advice regarding Movant's potential sentence constituted ineffective assistance of counsel.

2. <u>Possibility that Movant could plead guilty and receive a three-level downward adjustment to his sentence</u>

Additionally, Movant argues that Attorney Brady "failed to advise [him] that he could openly plea[d] guilty to the indictment without a plea agreement and still receive a 3-level reduction for acceptance of responsibility." Mot. to Vacate 5. He further claims that "[t]here is a big difference between being sentenced to a walking death sentence . . . and the sentence of 300 months cap offer which he could have achieved

through a timely plea of guilty." Mem. in Support 7.

However, even if Attorney Brady did not discuss a possible three-level adjustment for acceptance of responsibility, Movant cannot show prejudice. When the Government placed its plea offer of 300 months' imprisonment on the record, Movant rejected the offer. At sentencing, the Court calculated Movant's total adjusted offense level as a 44.[2] Resp. Ex. 25 (Sentencing Tr.) at 7:23–25. In the event that Movant timely accepted responsibility and the Government moved for the third-level of a downward adjustment, Movant would have faced an offense level of 41. The corresponding guidelines' range is 324 to 405 months. United States Sentencing Comm'n, Sentencing Table (2014), https://www.ussc.gov/sites/default/files/pdf/guidelines-

---

[2] In part III(B) of its Response, the Government avers that "Movant was not prejudiced by not being advised he could receive a three-level downward adjustment to his sentence." Resp. 10. As support for its position, the Government relies on Defendant's Presentence Investigation Report ("PSR"). *Id.* at 11. Specifically, Movant's PSR calculated his adjusted offense level as a 47. *Id.* Thus, the Government argues that, even if Movant received a three-level adjustment for acceptance of responsibility, he would still face a sentence of life imprisonment based on the adjusted offense level of 44. *Id.* However, the record indicates that, a four-level enhancement for abduction, which had been included in the calculations underlying the PSR's adjusted offense level of 47, was ultimately not applied. Resp. Ex. 25 (Sentencing Tr.) at 6:1–4. Accordingly, at sentencing, the Court sentenced Movant based on a total offense level of 44.

manual/2014/2014sentencing_table.pdf.    Although the corresponding range is lower than life imprisonment, the bottom of the guidelines' range for an offense level of 41 corresponds to a sentence that is longer in length than the sentence offered to Movant on the record.    That is, 324 months is longer than 300 months.    Movant elected to reject a plea offer of 300 months.    Therefore, Movant may not credibly assert that he would have chosen to timely plead guilty in order to receive an adjustment for acceptance of responsibility and face a guidelines' range of 324 to 405 months.    To the contrary, the record confirms that Movant elected to go to trial notwithstanding the fact that he therefore faced a longer sentence.

For these reasons, Movant is unable to show that he faced prejudice.    Having determined Movant cannot establish prejudice, it is unnecessary to consider whether Attorney Brady's performance in counseling his client about whether to plead guilty in light of a potential reduction for acceptance of responsibility was objectively reasonable. Movant cannot show prejudice; accordingly, he cannot establish ineffective assistance of counsel based on this theory.

## B. Counsel's Advice During Pre-Trial Proceedings

### 1. Failure to advise Movant that he could request a bench trial

Movant contends that "Attorney Brady could have and should have advised Mr. Gray that he could proceed to a 'bench trial' on 'stipulated facts.'" Mem. in Support 10. According to Movant, if he had been able to proceed with a bench trial, he may have retained eligibility for a downward sentencing adjustment based on acceptance of responsibility. *Id.*

As the Court previously discussed in more detail, Movant cannot show that any possible three-level downward adjustment for acceptance of responsibility would have impacted his eventual sentence. Specifically, even if Movant received a downward adjustment, the guideline range for his total offense level would have nonetheless remained life imprisonment.

Moreover, Federal Rule of Criminal Procedure 23 provides: "If the defendant is entitled to a jury trial, the trial must be by jury unless: (1) the defendant waives a jury trial in writing; (2) the government consents; and (3) the court approves." As the Government discusses in its Response, Movant cannot establish that the Government and the

Court would both agree to a bench trial. *See* Resp. 12. Without the ability to demonstrate that the requirements of Rule 23 would have been met if Defendant requested a bench trial, Defendant cannot prove that he was prejudiced by his counsel's alleged failure to advise Movant to proceed with a nonjury trial.

In sum, Movant cannot establish that the requirements of Rule 23 would have been satisfied had he sought a nonjury trial. Additionally, Movant's guideline sentencing range would have remained the same even if Movant was able to achieve a three-level reduction for acceptance of responsibility. Thus, Movant cannot show that he faced prejudice as a result of counsel's allegedly deficient advice. Accordingly, the Court need not analyze the *Strickland* performance prong, as Movant cannot establish ineffective assistance of counsel based on the alleged lack of advice to proceed with a nonjury trial.

## 2. Failure to object to the jury charge

Further, Movant argues that "Attorney Brady was ineffective for failure to object to the jury instructions which constructively amended counts Four, Six, and Nine which allowed Mr. Gray to be convicted for a crime that he was not indicted for." Mem. in Support 10. Moreover,

Movant avers that "[a] competent lawyer would have objected that [the jury charge] constructively amend[ed] the indictment, amounting to a structural error." *Id.* at 12.

"A constructive amendment occurs when it permits the defendant to be convicted upon a factual basis that effectively modifies an essential element of the offense charged or permits the government to convict the defendant on a materially different theory or set of facts than that with which she was charged." *United States v. Thompson*, 647 F.3d 180, 184 (5th Cir. 2011) (citation and internal quotation marks omitted).

### i.    Count Six

Regarding count six of the Second Superseding Indictment, the Government concedes that the inclusion of "reasonable opportunity to observe" in the jury instruction constructively amended the charge. Resp. 14.    Specifically, Movant's co-defendant, Lockhart, challenged this precise issue on direct appeal.    *See United States v. Lockhart*, 844 F.3d 501, 506 (5th Cir. 2016).    The Fifth Circuit vacated Lockhart's conviction pursuant to 18 U.S.C. § 1591 because the Court's jury instruction included the "reasonable opportunity" language from the

statute, but the indictment had not.  *Id.* at 515–16.  The Fifth Circuit

reasoned that "[i]t is conceivable that someone could recklessly

disregard a person's age without having a reasonable opportunity to

observe him or her."  *Id.*  Thus, it concluded that the Court's

instruction to the jury permitted the jury to convict on a basis that was

permitted by the statute but not charged in the indictment.  *Id.*

If Attorney Brady had objected to this language's inclusion, then

Movant could have raised the issue on direct appeal.  And—based on

the Fifth Circuit's decision in *Lockhart*—it appears that Movant's

conviction pursuant to count six would have been vacated on appeal.

Accordingly, Movant can show that he faced prejudice as a result of his

counsel's failure to object to the inclusion of "reasonable opportunity to

observe" in the jury charge.

In order for Movant to successfully raise an ineffective assistance

of counsel claim, Movant must also establish that Attorney Brady's

conduct fell outside the realm of reasonable professional conduct.  A

lawyer's performance is not deficient if the lawyer fails to anticipate

developments in the law or to make an objection on the basis of

unsettled law.  *See United States v. Fields*, 565 F.3d 290, 296 (5th Cir.

2009) (collecting cases); *Givens v. Cockrell*, 265 F.3d 306, 309 (5th Cir. 2001) (determining that the petitioner's counsel's performance was not deficient when the counsel failed to object to evidence but the law was unsettled regarding whether such evidence was permitted); *Burton v. Thaler*, 863 F. Supp. 2d 639, 654 (S.D. Tex. 2012) ("[N]o Strickland deficient performance occurs when trial counsel fails to raise an objection based on unsettled law.") (internal quotations and citations omitted)).

If an issue is novel, then the question of law is generally considered to be unsettled:   an attorney's performance is not deficient if he fails to raise the issue.   Specifically, courts have held that "counsel's failure to anticipate a rule of law that has yet to be articulated by the governing courts, and failure to raise a novel argument based on admittedly unsettled legal questions does not render his performance constitutionally ineffective."   *Gutierrez v. Davis*, No. A-16-CA-488-LY, 2017 WL 2637849, at *19 (W.D. Tex. June 19, 2017) (citing *Ragland v. United States*, 756 F.3d 597, 601 (8th Cir. 2014) (internal quotations and citations omitted)); *see also Esquivel v. United States*, No. EP-03-CR-1757-FM, 2005 WL 1750383, at *4 (W.D.

Tex. July 26, 2005) (stating that the petitioner could not show that his attorney's "failure to raise a then-novel . . . claim" fell below an objectively reasonable standard of performance). Notably, this remains true even if the legal issue is a novel application of existing case law. *Gonzales v. Collins*, 14 F.3d 55 (5th Cir. 1994) ("[A]n attorney's failure to anticipate novel applications of existing case law does not amount to deficient performance under *Strickland*.").

Movant cannot establish that Attorney Brady's conduct was deficient because—at the time of his trial—case law did not make clear that the inclusion of "reasonable opportunity to observe" was improper. To be sure, case law elucidated that a jury charge permitting a defendant to be convicted based on conduct not charged in the indictment constructively amends the indictment. *See Lockhart*, 844 F.3d at 514–16 (discussing case law). However, the Fifth Circuit had not yet considered the inclusion of the "reasonable opportunity" language in a jury charge. Notably, in *Lockhart*, the Fifth Circuit does not discuss any cases considering the "reasonable opportunity" language. *See generally id.* Thus, the legal issue was a novel application of existing case law.

Moreover, the performance prong of the *Strickland* test requires counsel's performance to be "objectively unreasonable." *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Thus, while it is "possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim" on appeal, "it is difficult to demonstrate that counsel was incompetent." *Id.* at 288. In sum, while he failed to raise the constructive amendment issue, existing case law did not speak to the precise issue at hand. Thus, in light of the "objectively unreasonable" standard, the Court determines that Attorney Brady was not incompetent in failing to identify the issue for appeal.

For these reasons, Attorney Brady's performance was not deficient.

### ii. *Counts Four and Nine*

Movant also contends that his attorney should have objected to the jury instruction regarding counts four and nine. Counts four and nine charge violations of 18 U.S.C. § 1591(a)(1)—which criminalizes sex trafficking either of children or of any person by force, fraud, or coercion—and 18 U.S.C. § 1594(c)—which criminalizes a conspiracy to violate § 1591(a)(1). As discussed below, Movant's arguments

misrepresent the statute.

In his Memorandum in Support, Movant argues that "[t]he jury was never instructed that the age of the victim must be found beyond a reasonable doubt" in order to sustain a conviction and that a "basic look at Alleyne would have shown [Attorney Brady] that when a minimum mandatory is moved by a fact in the statute like the age of the victim that fact is an element and must be submitted and found by a jury." Mem. in Support 16. Additionally, Movant contends that the indictment charged conduct "beginning on or about May 1, 2012 and continuing through [M]arch 31, 2013" but that the victim "turned 18 years of age on August 28, 2012 but the jury was allowed to use evidence [from] after she turned 18." *Id.* at 16. Accordingly, Movant contends that the jury charge aggregated conduct that should have been charged as separate offenses and that Attorney Brady provided ineffective assistance by failing to object to the charge. *Id.*

18 U.S.C. § 1591(b)(1) criminalizes trafficking a person "knowing, or . . . in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a

commercial sex act, *or* that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act." 18 U.S.C. § 1591(b)(1) (emphasis added). Accordingly, trafficking with the use of "force, threats of force, fraud, coercion" is prohibited by § 1591(b)(1) *regardless of the victim's age.*

Movant has failed to show that the jury charge was incorrect or that any constructive amendment existed. Specifically, Movant's conduct of trafficking a person through the use of force, fraud, or coercion violated § 1591(b)(1) even after the victim reached eighteen years of age. Thus, Movant cannot show prejudice. Moreover, his attorney was not required to raise meritless objections, so Movant cannot establish that Attorney Brady's performance was deficient. *United States v. Garza*, 340 F. App'x 243, 244–45 (5th Cir. 2009).

### 3. Failure to request Movant's Facebook evidence

According to Movant, "Attorney Brady failed to timely request Mr. Gray's Facebook evidence which would [have] rebutted the witnesses against him." Mot. to Vacate 6. Movant provides no further explanation regarding the alleged failure to seek evidence. For example, Movant neither discusses what evidence may have been

available on Facebook nor how any evidence retrieved from Facebook might have tended to impeach a witness. *See generally id.*, Mem. in Support.

"Conclusory allegations, unsubstantiated by evidence, do not support the request for an evidentiary hearing." *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013). Therefore, when a movant's claims are "speculative and conclusory" and the movant fails to "allege anything in support of his bare assertion," courts will deny a § 2255 motion. *Smith v. United States*, No. 3:11-CR-111-K, 2014 WL 1516186, at *3 (N.D. Tex. Apr. 16, 2014). *See also United States v. Hart*, No. W-01-CR-96, 2005 WL 8159169, at *1 (W.D. Tex. Apr. 22, 2005) ("Movant's bare assertion cannot provide a basis for Section 2255 relief.").

Without further support for his allegations, Movant is unable to establish either the prejudice or performance prong of the *Strickland* test. In particular, Movant has not shown the nature of the evidence or discussed how the evidence might have impeached any witnesses. Thus, Movant has not met his burden of showing that he was prejudiced by any failure to obtain evidence.

Additionally, according to the Government, "the entirety of the

search warrant returns for Movant's Facebook account were provided to [Attorneys] Brady and Holguin in discovery." Resp. 16. The Government contends that "the entirety of Movant's Facebook records were marked as Government's Exhibit #21 and excerpts were presented at trial." *Id.* Thus, the Government's briefing suggests that, even if Movant's lawyer did not timely request social media evidence, Movant would be unable to establish that he faced prejudice because Movant's counsel actually received the evidence in question.

In sum, because Movant's allegations regarding Facebook evidence are wholly conclusory, and because Movant could not establish prejudice even if his allegations were not conclusory, the Court concludes that Movant's claim regarding the allegedly untimely request for Facebook evidence must be denied.

4. <u>Failure to object to the selection of a jury without any African American members</u>

Movant argues that "Attorney Brady failed to challenge the e[m]paneling of the jury with no African American jurors of Mr. Gray's age and race that would understand what was being said in the social media evidence used in trial." Mot. to Vacate 6. In response, the Government asserts that "[t]hough the burden is on Movant to provide

evidence to the Court, it is the undersigned Assistant United States Attorney's recollection that the venire panel had two African American prospective jurors." Resp. 17. Additionally, the Government contends that it "struck one of the two [African American prospective jurors] because he was falling asleep during voir dire" and that "one of the defendants (or perhaps multiple defendants) struck the other African American juror." *Id.*

Although "racial discrimination in jury selection offends the Equal Protection Clause[,] . . . a defendant has no right to a 'petit jury composed in whole or in part of persons of his own race.'" *Batson v. Kentucky*, 476 U.S. 79, 85 (1986) (quoting *Strauder v. State of W. Virginia*, 100 U.S. 303, 305 (1879)), holding modified by *Powers v. Ohio*, 499 U.S. 400 (1991). "But the defendant does have the right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria." *Id.* (citing *Martin v. Texas*, 200 U.S. 316, 321 (1906); *Ex parte Virginia*, 100 U.S. 339, 345 (1880)). Accordingly, "once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation

(step two). If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination." *Purkett v. Elem*, 514 U.S. 765, 767 (1995).

Here, Movant does not argue that the petit jury contained no African American members *because of* racially-motivated discrimination.[3]  Thus, Movant fails to allege that his attorney could have plausibly made out a prima facie case of racial discrimination. Further, based on the Government's briefing, it appears that the Government could show a race-neutral reason for striking the African American juror who allegedly was falling asleep during jury selection. Additionally, if a defendant—and not the Government—chose to strike the other African American juror, Movant likely could not establish that the other juror was stricken for discriminatory reasons (and, as stated, Movant has not alleged any facts suggesting that discriminatory intent

---

[3] To the extent that Defendant challenges his attorney's failure to object to the selected jurors' ages and alleged lack of ability to appreciate social media evidence, he cannot establish a claim.  Since prospective jurors may generally be stricken for any reason except for racial or gender discrimination, Defendant's attorney could not have successfully objected to the petit jury on these grounds.  Accordingly, Defendant is unable establish that he suffered prejudice when his attorney did not object on these grounds.

existed).   Thus, Movant has not shown that Attorney Brady might have successfully raised a *Batson* challenge to the composition of the petit jury.

Since Movant has not shown that Attorney Brady could have successfully challenged the composition of the jury pool, Movant has failed to demonstrate that he was prejudiced by his attorney's decision not to object to the selected jury.   That is, Movant has not shown that any objection to the empaneled jury might have resulted in a favorable outcome for Movant.   Because Movant has not shown that his attorney's performance prejudiced him, Movant cannot establish ineffective assistance of counsel on this claim.

### C.   Counsel's Performance During Trial

1.   <u>Failure to advise Movant that the ultimate decision to testify was his</u>

Movant argues that he received ineffective assistance of counsel during trial.   First, Movant contends that "Attorney Brady failed to advise Mr. Gray that the ultimate decision [regarding] whether to testify belong[ed] to him not trial counsel."   Mot. to Vacate 8. Specifically, Movant claims that "Attorney Brady failed to advise Mr. Gray on the negative consequences of not testifying" and that, because

Movant did not fully understand the "strategic implications of not testifying," his counsel's performance was deficient.   Mem. in Support 18.   Moreover, Movant argues that, if he had testified at his trial, "his testimony would have been the cornerstone of his defense" and that he would have offered "chronologically [sic] details of his various conversations, knowledge of what transpired and his actual innocence." *Id.*   Movant fails to provide any further details in support of his assertion that his testimony might have resulted in a determination of innocence.   *See generally id.*

"The decision of whether to testify belongs to the defendant and his lawyer cannot waive it over his objection."   *United States v. Mullins*, 315 F.3d 449, 454 (5th Cir. 2002).   Although a lawyer may not prohibit a defendant from testifying, "when the record is simply that the defendant knew of his right to testify and wanted to do so but counsel was opposed, defendant acquiesced in his lawyer's advice, and therefore the only inquiry is whether that advice was sound trial strategy."   *Id.* at 453–54.

Moreover, when a movant "does not specify the grounds for his allegation" that his counsel was ineffective in failing to call him to the

stand, his "vague and conclusory assertion" is insufficient to trigger a hearing on a § 2255 motion. *United States v. Martinez*, 181 F.3d 627, 628 (5th Cir. 1999). In some circumstances, instead of summarily disposing of a motion, courts should order a movant to add more detail to their right-to-testify claims. For example, in *Martinez*, the Fifth Circuit determined that the movant should be provided with an opportunity to add detail to his allegations when the movant alleged that he told his counsel that he wanted to testify on his behalf, but his counsel nonetheless did not call him to the stand. *Id.* On the other hand, courts have summarily disposed of § 2255 motions when right-to-testify allegations are "more cursory" than those in *Martinez*. *Silva-Garcia v. United States*, No. 5:10-CR-2224-1, 2012 WL 5464639, at *4 (S.D. Tex. Nov. 8, 2012) (noting that the *Martinez* movant "alleged that he told his attorney that he wanted to testify and that his attorney did not call him to the stand" and that a problem exists "with automatically allowing petitioners to supplement the barest allegations of right-to-testify violations").

Here, nothing in the record indicates that Attorney Brady interfered with Movant's decision to testify, and Movant does not allege

that his attorney failed to call him to the stand after he made clear that he wanted to testify. Instead, Movant asserts that he did not fully understand the "strategic implications" of not testifying. Further, Movant fails to allege facts demonstrating how he might have testified. For example, Movant does not identify any particular details or occurrences that he might have testified about if he had taken the stand. Moreover, Movant fails to explain how his testimony may have undermined the factual allegations proffered by the Government. Accordingly, Movant has not alleged facts that would tend to establish that his lawyer's advice regarding Movant's testimony was unsound trial strategy.

In sum, Movant's conclusory allegations do not support that his lawyer may have interfered with Movant's right to testify against Movant's expressed wishes. Thus, the Court is of the opinion that Movant's "right-to-testify claim does not merit supplementation and it is without merit." *Silva-Garcia v. United States*, 2012 WL 5464639, at *4. Moreover, Movant has not alleged facts demonstrating that his lawyer's advice was unsound trial strategy. Rather, Movant provides only the barest of allegations that, had he taken the stand, his

testimony would have been the cornerstone of his defense. Because Movant has neither alleged facts that tend to establish that he was prejudiced by his lawyer's advice nor that his lawyer's performance fell below an objective standard of reasonableness, Movant has not established that his attorney provided ineffective assistance.

2.      Failure to secure evidence to impeach a witness

Next, Movant argues that "Attorney Brady failed to secure impeachment social media evidence as directed by Mr. Gray which would [have] impeached the Government's key witness." Mot. to Vacate 8. Movant does not provide further support for this allegation. The Government contends that "it is impossible to evaluate" whether Movant's attorney provided ineffective assistance because Movant's claim is "simply one conclusory statement." Resp. 19. Additionally, the Government provides that "[i]n as much as the key witnesses against Movant were L.J.A., A.N.J. and Brandon Shapiro, the Government produced their respective Facebook accounts to the defense." *Id.*

As previously discussed, bare and conclusory assertions are insufficient to trigger a hearing on a § 2255 motion, and courts

routinely deny ineffective assistance claims based on unsupported allegations. Movant's allegation regarding social media evidence is a bare assertion, and Movant's conclusory statement does not provide a basis for relief. Thus, the Court determines that Movant's claim should be denied.

3. <u>Failure to move for a mistrial after the prosecution constructively amended Count Six of the Second Superseding Indictment</u>

In his Motion, Movant contends that his attorney "failed to move for a mistrial after the Government constructively amended count six of the indictment." Mot. to Vacate 8. The Court has already discussed Movant's constructive amendment concerns above, in Part III(B)(2)(i) of this opinion. Specifically, Movant can show prejudice on this issue: The Fifth Circuit subsequently determined that the inclusion of the "reasonable opportunity to observe" language in the jury charge constructively amended the indictment. However, Movant cannot show that Attorney Brady's performance was objectively deficient: The Fifth Circuit had not considered this precise issue prior to Movant's trial, and the performance prong of the *Strickland* test does not require attorneys to anticipate developments in the law. Accordingly, Movant

cannot show that his attorney provided constitutionally ineffective assistance.

### 4. Failure to secure an expert on the credibility of a witness

Movant contends that his attorney "failed to secure an expert on the credibility of witnesses['] self-serving testimony." Mot. to Vacate 8. Again, Movant provides no further support for this allegation.

Generally, "[i]neffective assistance claims based on counsel's failure to call a witness 'are not favored in federal habeas review.'" *Yates v. Collins*, 988 F.2d 1210 (5th Cir. 1993) (quoting *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984)). In the Fifth Circuit, "petitioners making claims of ineffective assistance based on counsel's failure to call a witness" are required "to demonstrate prejudice by 'nam[ing] the witness, demonstrat[ing] that the witness was available to testify and would have done so, set[ting] out the content of the witness's proposed testimony, and show[ing] that the testimony would have been favorable to a particular defense.'" *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010) (quoting *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009)) (alterations in original).

In this case, Movant has not demonstrated prejudice.

Specifically, Movant has not identified an expert who might have testified, demonstrated that the expert was available and willing to testify, set out the contents of the testimony, or shown that expert testimony would have been favorable to his defense. *See also Marion v. United States*, No. MO:09-CR-173-RJ-DC, 2014 WL 12725279, at *9 (W.D. Tex. Apr. 23, 2014), *report and recommendation adopted*, No. MO:09-CR-173-RJ, 2014 WL 12725280 (W.D. Tex. Aug. 26, 2014) (applying the Fifth Circuit's test to a claim regarding counsel's alleged failure to call an expert witness and determining the movant's claim should be denied). Since Movant has not shown that he was prejudiced by counsel's alleged failure to call an expert witness—and because Movant provides only a bare allegation—the Court concludes that Movant's claim should be denied.

### D. Counsel's Performance During Sentencing

    1.   <u>Failure to object to the use of force sentencing enhancement</u>

Additionally, Movant alleges that Attorney Brady was ineffective during his sentencing hearing and that "Attorney Brady failed to object that use of force sentence enhancement was an element of the conviction." Mot. to Vacate 9. However, Movant fails to cite any

precedent supporting his argument, and it appears he could not support his position, as his argument fails on the merits.

The Fifth Circuit has held that "even if [a sentencing enhancement] was an element of the offense," the enhancement may be applied unless specifically prohibited. *United States v. Cedillo-Narvaez*, 761 F.3d 397, 403 n.4 (5th Cir. 2014). "Double counting is prohibited only if the particular guidelines at issue specifically forbid it." *Id.* (quoting *United States v. Barraza*, 655 F.3d 375, 384 (5th Cir. 2011) (alteration omitted). Here, § 2A3.1(b)(4)(B) of the 2014 Federal Sentencing Guidelines Manual, published by the United States Sentencing Commission, provides that "if the victim sustained serious bodily injury," then the offense level should "increase by 2 levels." Nothing in the guidelines suggests that the enhancement should not apply if the use of force is an element of the crime of conviction. Because the guidelines at issue do not limit double counting this offense characteristic, the two-level enhancement pursuant to § 2A3.1(b)(4)(B) was properly applied.

Further, Movant argues that no use-of-force sentencing enhancement should have been applied because "during trial the victim

testified under oath that [Movant] never hurt her." *Id.* The Government avers that Movant's suggestion that his victim[4] testified that he never hurt her is "laughable" and cites to portions of the trial testimony demonstrating victim L.J.A.'s testimony about Movant's use of force. Resp. 20–21. The Court finds that a sufficient factual basis existed in the record to support a two-level sentencing enhancement based on the victim's sustaining serious bodily injury.

At trial, victim L.J.A. testified that Movant "was violent with me everywhere" but that the first time Movant more severely beat her was in Killeen, Texas. Resp. Ex 24 (Trial Tr., Volume II) at 62:14, 63:14–18. Specifically, L.J.A. testified that, while in Killeen, Movant "basically just grabbed me and took me in the room, threw me on the ground. I landed on my stomach. He hit me like this from the back, (Indicating), which is why my jaw was hurt." *Id.* at 65:1–4. Because her jaw had been injured, L.J.A. "spit out blood" and told Movant that she thought her jaw might have been broken. *Id.* at 65:15–19. After leaving Killeen, Movant and L.J.A. travelled to Odessa, Texas. *Id.* at

---

[4] Movant's briefing does not specify which victim allegedly testified that he never hurt her. The Government presumes Movant intends to refer to victim L.J.A. *See* Resp. 21.

67:12–17.   L.J.A. testified that she was unable to make money while in Odessa because, due to having been "beaten up," she "looked very deformed."   *Id.* at 68:4–6.   Based on the record, it is evident that Movant cannot support his position that victim L.J.A. testified that he never hurt her.   Thus, the Court concludes that Movant's argument is without merit.

In sum, Movant has failed to show that any objection—either to double counting or based on the underlying factual basis—that Movant's attorney may have raised to the two-level sentencing enhancement pursuant to § 2A3.1(b)(4)(B) might have had any merit. Accordingly, Movant has not shown prejudice because he fails to demonstrate that an objection may have benefitted him.   Additionally, attorneys have no obligation to make meritless objections during sentencing.   *Garza*, 340 F. App'x at 244–45 ("[T]he law in this circuit makes clear that counsel was not required to make meritless objections under then-existing precedent . . . .").   Thus, Attorney Brady had no obligation to raise an objection, and Movant cannot show that his performance was deficient.   For these reasons, the Court concludes that Movant's claim must be denied.

2. <u>Failure to obtain a mental expert who would have testified that Movant returned from Iraq with Posttraumatic Stress Disorder</u>

According to Movant, "Attorney Brady failed to request for a mental health expert to help . . . explain Mr. Gray had PTSD after returning from Iraq which would [have] been considered mitigating evidence along with his disadvan[taged] upbringing." Mot. to Vacate 9. Movant further explains that Attorney Brady did not "seek the aid of a mental health expert to give a more complete evaluation of Mr. Gray's immaturity and mental health issues developed during the Iraq war." Mem. in Support 20.

As previously provided, a movant must "demonstrate prejudice by 'nam[ing] the witness, demonstrat[ing] that the witness was available to testify and would have done so, set[ting] out the content of the witness's proposed testimony, and show[ing] that the testimony would have been favorable to a particular defense'" in order to successfully mount an ineffective assistance claim based on their counsel's failure to call a witness. *Woodfox*, 609 F.3d at 808 (quoting *Day* 566 F.3d at 538) (alterations in original).

Here, Movant has again failed to identify a witness who might

have testified, demonstrate that the witness was willing and available to testify, or show how the testimony would have aided in his sentencing hearing. Thus, Movant has not established prejudice pursuant to the Fifth Circuit's test. Because Movant has not shown prejudice, the Court determines that his claim must be denied.

> 3. <u>Failure to object to the excessive sentence and to ask the Court to consider Movant's age</u>

In his Motion to Vacate, Movant contends that "Attorney Brady failed to argue that the Court consider the § 3553(a)(6) factors of like defendants and that the sentence Mr. Gray was receiving was for someone who committed first degree murder." Mot. to Vacate 8. Additionally, Movant argues that he was "young enough to change his life around." *Id.* Thus, it appears that Movant believes his sentence was excessive pursuant to the sentencing guidelines and in light of his age, and Movant believes counsel was constitutionally ineffective in failing to sufficiently raise these arguments.

Regarding his allegedly excessive sentence, Movant appears to believe his sentence was excessive pursuant to the sentencing statute. Specifically, 18 U.S.C. § 3553(a)(6) provides that "[t]he court, in determining the particular sentence to be imposed, shall consider . . .

the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Movant alleges that his sentence is excessive in light of this provision and that, because his attorney failed to object on these grounds, Attorney Brady's assistance was constitutionally ineffective. Mot. to Vacate 8. Additionally, Movant argues that his attorney could have argued that the sentence "serves no valid penological purpose" and that his attorney might have "provided a scientific basis that Mr. Gray had a realistic possibility of rehabilitation." Mem. in Support 20.

However, Movant has not shown that his sentence is disparate when compared to other defendants who have similar records and have been convicted of similar misconduct. Movant only provides a conclusory allegation that an "unwarranted disparity" exists between him and similarly situated offenders. However, unsupported "bald assertions" do not raise a constitutional issue in a habeas proceeding. *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).[5]

---

[5] Additionally, Movant suggests that life imprisonment sentences should be considered unreasonable when a defendant is convicted of an offense other than murder. However, Movant does not—and cannot—cite any precedent in support of his belief. In fact, pursuant to the Sentencing Guidelines, non-homicide offenses may command a sentence of life imprisonment, as is the case here.

Additionally, contrary to Movant's assertion that no valid penological purpose exists for his sentence, the Court considered the purposes of the Sentencing Guidelines.   Specifically, the Court stated:

> In this case, the court is asked to consider a life sentence as to each of the counts under the guidelines and to determine if that is the sentence that is sufficient but not greater than required in order to achieve the purposes of the sentencing statute, to include the protection of the community, to include deterring the defendant from engaging in subsequent conduct, to include an appropriate punishment for the consequences of poor decisions that were made, and to include the opportunity for possible rehabilitation through programs that may be available.

Resp. Ex. 25 (Sentencing Tr.) at 21:15–22.   The Court considered the penological objectives provided during the sentencing hearing—e.g., protection of the community, deterrence, and punishment—and determined that a sentence of life imprisonment served these objectives and the purposes of the sentencing statute.   Since the Court considered the sentencing statute's requirements when imposing Movant's sentence, Movant is unable to show that he suffered prejudice by Attorney Brady's alleged failure to object to the sentence by arguing that a sentence of life imprisonment is excessive pursuant to the sentencing statute.

Regarding his age, Movant contends that "[i]f attorney Brady

43

would [have] done his research[,] he would have found that the walking death sentence the PSR called for was in violation of the Eighth Amendment." Mem. in Support 19. Specifically, Movant avers that his sentence violated the Eighth Amendment because the United States Supreme Court has held that mandatory life sentences without the opportunity for parole are unconstitutional for juvenile offenders and Mr. Gray was relatively young at the time of his offense. *Id.*

Movant's contention that his counsel was constitutionally ineffective by failing to argue that the Eighth Amendment prohibits Movant's sentence is unavailing. The cases that Movant cites regarding juvenile offenders apply *only* to offenders who have not yet reached their eighteenth birthday at the time of their offense. In *Graham v. Florida* and *Miller v. Alabama*, the Supreme Court held that the Eighth Amendment prohibits the imposition of sentences of life imprisonment without parole on criminal defendants who were under the age of eighteen at the time of their offense. *Graham v. Florida*, 560 U.S. 48 (2010) (holding that life imprisonment without parole sentences imposed on juvenile defendants accused of non-homicide offenses violate the Eighth Amendment), *Miller v. Alabama*, 567 U.S.

460 (2012) (extending *Graham* to apply to homicide offenses).

According to Movant, his attorney should have argued that these cases preclude Movant's sentence because young adults may have some developmental and impulse-control deficiencies similar to the deficiencies found in children.   Mem. in Support 19.   Specifically, Movant avers that scientific research "has shown that certain areas of the brain do not fully develop until the early-to-mid twenties which particularly affect judgment and decision-making."   *Id.*   Therefore, Movant believes that "there is not a meaningful difference between offenders who are under the age of 18 years old and those up to an[d] including 22 years old."   *Id.*

Contrary to Movant's assertions, case law distinguishes between offenders who are under the age of eighteen and those who are not.   In fact, the Supreme Court specifically determined that the prohibition against a sentence of life without parole is a "categorical restriction" because "children are constitutionally different from adults for purposes of sentencing."   *Graham*, 560 U.S. at 59; *Miller*, 567 U.S. at 471. Accordingly, the Eighth Amendment does not bar the imposition of a sentence of life imprisonment on adult defendants, even if the

defendant may have been relatively young or immature at the time of their offense.    Since the Eighth Amendment does not bar Movant's sentence, Movant is unable to establish that Attorney Brady might have been successful if he had argued that the sentence was impermissible.

During the sentencing hearing, the Court noted Movant's age, stating:

> I do believe that at this seat of justice there is room for mercy. I do believe that individuals who are young in years biologically have the ability and capacity to learn from errors in judgment and behavior that may even be characterized as reprehensible. . . . The mercy that Mr. Brady has asked me to consider I have done so.    I do that in every case, and especially in cases where I have a young man before me who is 25 years of age.

Resp. Ex. 25 (Sentencing Tr.) at 20:18–22, 21:23–22:1.    Because Movant's age was considered during sentencing, Movant cannot establish that he was prejudiced by his attorney's alleged failure to discuss Movant's age during the sentencing hearing.

In short, Movant has not established that his attorney would have been successful in raising an Eighth Amendment challenge to his sentence based on Movant's relatively young age.    Additionally, the Court considered Movant's age at the time of sentencing and nonetheless imposed Movant's sentence.    For these reasons, Movant

has not shown that he was prejudiced by his attorney's alleged failure to object to his sentence based on his age. For these reasons, the Court concludes that Movant has not demonstrated that Attorney Brady provided constitutionally ineffective assistance by failing to challenge Movant's sentence based on his age or by failing to argue that the sentence was excessive in light of the sentencing statute.

### E.    Cumulative Error

Finally, Movant asserts that, even if each independent alleged error is insufficient to establish ineffective assistance of counsel, "the cumulative impact of these errors deprived him of effective and just assistance of counsel." Mem. in Support 20.

"The cumulative error doctrine provides for reversal when an aggregation of non-reversible errors, i.e., plain and harmless errors that do not individually warrant reversal, cumulatively deny a defendant's constitutional right to a fair trial." *United States v. Cervantes*, 706 F.3d 603, 619 (5th Cir. 2013). "However, the cumulative error doctrine is only to be used in 'rare instances.'" *Id.* (quoting *United States v. Delgado*, 672 F.3d 320, 343–44 (5th Cir. 2012) (en banc)).

"Meritless claims or claims that are not prejudicial cannot be

cumulated, regardless of the total number raised." *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996). Similarly, "[f]ederal habeas relief is only available for cumulative errors that are of a constitutional dimension." *Coble v. Quarterman*, 496 F.3d 430, 440 (5th Cir. 2007). Thus, if "none [of a petitioner's] ineffective assistance claims establish ineffective assistance under *Strickland*," then the petitioner "has not identified errors of constitutional dimension." *Id.*

Here, Movant has not identified claims of constitutional dimension. Further, because Petitioner's claims are without merit, they cannot be cumulated. Since Petitioner's individual claims do not show that Attorney Brady provided ineffective assistance, the Court declines to find cumulative error.

## IV. CERTIFICATE OF APPEALABILITY

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In cases where a district court rejects a movant's constitutional claims on the merits, the movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v.*

*McDaniel*, 529 U.S. 473, 484 (2000); *see also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* to a certificate of appealability determination in the context of § 2255 proceedings). To warrant a certificate as to claims that a district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, Movant's § 2255 Motion fails because he has not identified a transgression of his constitutional rights or alleged an injury that would, if condoned, result in a complete miscarriage of justice. Additionally, reasonable jurists could not debate the Court's reasoning for the denial of Movant's § 2255 claims on substantive or procedural grounds—or find that his issue deserves encouragement to proceed. *Miller El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Thus, the Court will not issue a certificate of appealability.

## V.    CONCLUSION

Accordingly, **IT IS ORDERED** that Movant Richard Gray's pro se

"Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody" (ECF No. 735) is **DENIED**, and his civil cause is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that all pending motions in this cause, if any, are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Movant Richard Gray is **DENIED** a **CERTIFICATE OF APPEALABILITY**.

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this case.

**SIGNED** this **23rd day** of **July, 2019**.

_____
**PHILIP R. MARTINEZ**
**UNITED STATES DISTRICT JUDGE**